UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

ANGELA MICHELLE LASALLE,

                                        Plaintiff,

                -vs-                                        14-CV-872-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────────────────

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (ELIZABETH HAUNGS, ESQ., of Counsel), Amherst, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (FERGUS KAISER, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated October 8, 2015 (Item 13).

Plaintiff Angela Lasalle initiated this action on October 20, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Act.   Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Item 9) and the Commissioner has cross-moved for the same relief (Item 11).   For the following reasons, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

Plaintiff was born on October 29, 1981 (Tr. 171).[1]   She filed applications for DIB and SSI on July 11, 2011, alleging disability due to depression, anxiety, back and neck pain, and hearing impairment with an onset date of August 1, 2007  (Tr. 190).  The claims were denied administratively on November 4, 2011 (*see* Tr. 102-113).  Plaintiff requested a hearing, which was held on December 14, 2012, before Administrative Law Judge ("ALJ") Donald T. McDougall (Tr. 29-86).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Additionally, the ALJ took the testimony of a Vocational Expert ("VE").

On January 17, 2013, ALJ McDougall issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 11-23).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff had the following "severe" impairments: anxiety disorder, depression, mild arthritis of the back, bilateral hearing impairment, and mild right carpal tunnel syndrome (Tr. 13).  The ALJ found that the evidence in the record regarding plaintiff's symptoms and functional limitations did not support a finding that these impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 13-15).

The ALJ discussed the evidence in the record regarding plaintiff's medically

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

determinable impairments–including treatment notes and consultative evaluations, along with plaintiff's hearing testimony and statements about the limiting effects of her impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform light work[2] with the following limitations: plaintiff must be able to change from sitting to standing positions at least every half-hour; she should not use her right hand more than 20 minutes at a time; she must not balance, stoop, kneel, crouch, crawl, or climb; plaintiff may not climb ropes, ladders, and scaffolds; she must avoid extreme cold temperatures, wetness, and humidity; she can work in a low-stress position, performing simple, routine tasks; plaintiff cannot handle money or work around the general public; she can have only occasional contact with co-workers or supervisors; she instructions should be received face-to-face with no requirement for hearing soft tones and no loud noises; plaintiff must be able to use hand sanitizer every 20 minutes (Tr. 15). Considering plaintiff's age (25 years at the alleged onset date), limited education (some high school), work experience (inability to perform past relevant work), and RFC, and relying on the testimony of a VE, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform and that she has not been under a disability from the onset date to the date of the decision (Tr. 22-23).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review (Tr. 1-5), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the

---

[2] "Light work" involves lifting no more than 20 pounds occasionally and 10 pounds frequently, "a good deal of walking or standing," or sitting with some pushing or pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Commissioner's determination should be reversed because the ALJ erred in his assessment of plaintiff's credibility *See* Item 9-1.   The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record.   *See* Item 11-1.

## DISCUSSION

### I.      Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."   *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).   The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.   *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.   *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).   The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

4

conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).


II.     **Standards for Determining Eligibility for Disability Benefits**

To be eligible for DIB and SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy ....” 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a “severe” impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which “significantly limits [the claimant's] physical or mental ability to do basic work activities ....”  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).  Where the record supports a finding that the claimant's non-exertional limitations would have little or no effect on the occupational base of unskilled work, the ALJ may properly rely on the Grids as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation.  *Cornell v. Colvin*, 2014 WL 1572342, at *9 (W.D.N.Y. Apr. 18, 2014) (citing *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010); *Bapp*, 802 F.2d at 605-06).

### III.    The ALJ's Disability Determination

In this case, ALJ McDougall determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since August 1, 2007, the alleged onset date (Tr. 13).  At step two, the ALJ determined that plaintiff's impairments - anxiety disorder, depression, arthritis, hearing impairment, and carpal tunnel syndrome -  are "severe" as that term is defined in the regulations because they impose significant work-related functional limitations, but that plaintiff's impairments did not meet or medically equal the severity of a listed impairment (Tr. 14-15).  Additionally, the ALJ considered plaintiff's mental impairments according to the "special technique" set forth in 20 C.F.R. §§ 40.1520a and 416.920a and found that plaintiff's depression and anxiety caused mild limitations in her activities of daily living, moderate difficulties in social functioning, mild limitations in concentration, persistence or pace, and that she had experienced no episodes of decompensation (Tr. 14).  The ALJ then found that plaintiff had the RFC for light work, with various non-exertional limitations, including a sit/stand option, restrictions for certain postural activities, pulmonary irritants, contact with the general public, and other limitations related to her anxiety and hearing impairment  (Tr. 15).  In making this determination, the ALJ discussed plaintiff's hearing testimony and statements in the record regarding her symptoms, along with the objective medical evidence contained in the treatment records and reports obtained from consultative examiners (Tr. 15-21).   Based upon his consideration of this evidence, the ALJ found that plaintiff's allegations regarding the limiting effects of her symptoms were "disproportionate to the objective medical evidence" (Tr. 17).  He gave great weight to the opinions of the consultative examiners, and noted plaintiff's "inconsistent and sporadic treatment" (Tr. 21).

9

Upon determining that plaintiff was unable to perform her past relevant work as a fast food worker, at the final step of the sequential evaluation the ALJ found that plaintiff was capable of making a successful adjustment to other work that exists in substantial numbers in the national economy, considering her age, education, work experience, and RFC (Tr. 22-23).  The ALJ relied on the testimony of a VE, Joe Pierson, who testified that plaintiff would be able to perform the requirements of representative occupations such as mail clerk, photocopy machine operator, and table worker. *Id.*  Accordingly, the ALJ found that plaintiff was not under a disability within the meaning of the Act at any time from the alleged onset date through the date of the decision (Tr. 23).

## IV.    Plaintiff's Motion

Plaintiff contends that the ALJ failed to fully and properly assess her credibility, as required under the Social Security regulations and rulings. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), quoted in *Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929. The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue,* 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance. The ALJ noted plaintiff's testimony about the limiting effects of her anxiety and depression, including her fear of germs and disease (Tr. 34-35), her fear of undercooking meat and "poisoning" her family (Tr. 42 ), and her excessive hand-washing and use of hand sanitizers (Tr. 45). Plaintiff testified that she feels "safe" and "comfortable" in her own home, but feels stressed when she leaves her home without her husband or mother (Tr. 63). The ALJ also noted plaintiff's complaints of pain. She stated that she cannot stand or sit for long periods and must change positions frequently (Tr. 38, 41).

The ALJ then discussed the objective medical evidence indicating plaintiff's "lack of significant, sustained mental health treatment, [and] minimal or negative diagnostic test results" (Tr. 17). A consultative physical examination of the plaintiff in 2010 revealed full spinal flexion and full range of motion in all extremities (Tr. 271) and  no limitations on her ability to lift, carry, stand, sit, or walk (Tr. 272). A 2011 examination by the same examiner, found only mild limitations for repetitive heavy lifting, bending, reaching, pushing, and pulling (Tr. 451). A neurological examination in 2011 indicated a cervical strain for which plaintiff was prescribed a course of physical therapy (Tr. 482). X-rays taken in July 2011 showed an unremarkable thoracic spine and mild degenerative disc space narrowing at T12 - L1 (Tr. 436-37). Nerve conduction studies in 2012 revealed only mild right carpal tunnel syndrome (Tr. 501).

Plaintiff underwent two consultative psychiatric examinations. In 2010, Dr. Sandra Jensen diagnosed generalized anxiety disorder, panic disorder with agoraphobia, and

obsessive-compulsive disorder ("OCD") (Tr. 276).  She found that plaintiff's difficulties were largely caused by OCD and recommended "intensive outpatient psychotherapy to rid herself of her anxiety disorder, which could also help with her panic disorder, agoraphobia and obsessive-compulsive disorder." (Tr. 276).  Nonetheless, Dr. Jensen found that plaintiff's psychiatric problems "would not greatly interfere with the claimant's ability to function on a daily basis." *Id.*  In 2011, Dr. Susan Santarpia found plaintiff able to follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make appropriate decisions (Tr. 446). Dr. Santarpia found plaintiff only mildly impaired in her ability to relate adequately with others and deal with stress.  She recommended individual psychotherapy and vocational training and rehabilitation.  *Id.*

In February 2012, plaintiff commenced mental health treatment at Community Concern Mental Health Clinic ("CCMHC").   She was evaluated by Dr. D. Gupta, a psychiatrist, on May 1, 2012, who diagnosed major depression (Tr. 505). At the time, plaintiff reported trials of several medications in the past, but stated that she was taking no medication (Tr. 504).  Dr. Gupta prescribed Zoloft and Trileptal (Tr. 505).  Plaintiff saw a social worker on several occasions, but frequently cancelled or failed to appear for her appointments (Tr. 510-11). Treatment notes indicate that, although plaintiff was prescribed Zoloft, she did not start the medication for fear of weight gain (Tr. 511-12).  In August 2012, plaintiff's case was closed after she failed to appear for counseling sessions in July and August 2012,  failed to respond to telephone messages, and failed to respond to a letter from the clinic (Tr. 511-12).

The ALJ concluded that plaintiff's record of "inconsistent and sporadic treatment"

13

did not support her allegations of total disability (Tr. 21).  SSR 96-7p provides that an individual's allegations of disability may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.  However,

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996).

Here, plaintiff contends that it was error for the ALJ to draw a negative inference from her sporadic mental health treatment, suggesting that her mental impairments contributed to her noncompliance.  However, the ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighing against her credibility.  *See Weed Covey v. Colvin,* 96 F.Supp.3d 14, 33 (W.D.N.Y. 2015); *Jackson v. Barnhart*, 2008 WL 1848624, *11 (W.D.N.Y. April 23, 2008) (failure to follow a recommended course of treatment weighs against a claimant's credibility); 20 C.F.R. 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled").  The fact that the ALJ did not explicitly reference plaintiff's possible explanations for her failure to pursue treatment does not mean that they were not considered.  *See See Greene v. Colvin,* 936 F.Supp.2d 216, 226 (W.D.N.Y.2013) (ALJ's failure to cite specific evidence does not indicate that it was not considered).  The ALJ questioned plaintiff at length about the reasons she felt she could not work and heard her testimony regarding her fear of germs, anxiety about her children, and inability to leave her home without her husband or mother.  The record reflects that plaintiff was referred to a mental health clinic by her primary physician, but did not follow through with treatment.  In contrast, the record

14

indicates that plaintiff was fully capable of making and keeping appointments with other medical providers during the same time period (Tr. 525-35). There is nothing in the record to suggest that plaintiff's mental impairments prevented her from following through with treatment. Accordingly, the ALJ's finding that plaintiff's credibility was diminished by her failure to regularly attend treatment sessions was supported by the record.

Plaintiff further argues that the ALJ drew an improper inference with regard to plaintiff's status as a stay-at-home mother. Having reviewed the hearing transcript and the administrative decision, the court notes that plaintiff repeatedly expressed her desire to stay at home where she is in control of her surroundings (Tr. 62, 63). The ALJ made no value judgment with regard to her status as a stay-at-home mother. He merely stated plaintiff's preference as reflected in her testimony and found that the record did not support her allegations of total disability.

In the court's view, the ALJ's credibility finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of her symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case complies with the requirements of the Act, the implementing regulations and SSA rulings, and the weight of controlling Second Circuit authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct

legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 9) is denied, the defendant's cross motion (Item 11) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.


So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   February 3, 2016